ROBERT DOYLE, Plaintiff, Appellant and Appellee, *v.* POLY-PANE PACKAGING COMPANY, INC., Defendant, Appellee and Appellant.

No. 12172. Submitted November 13, 1957.—Decided March 25, 1958.

*Córdova & González* and *Hernán R. Franco* for appellant and appellee. *Orlando J. Antonsanti* and *Pascual Amado Rivera* for appellee and appellant.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

Pursuant to the provisions of Act No. 10 of November 14, 1917 (Sp. Sess. Laws, p. 216), entitled "An Act to determine the procedure in cases of claims for wages by farm laborers against their employers" —32 L.P.R.A. § § 3101–17—Robert Doyle filed a complaint in the Superior Court, San Juan Part, against Polypane Packaging Co., Inc. In its answer the defendant admitted some of the facts of the complaint, denied others, and also claimed from the plaintiff a setoff for damages.

At the opening of the trial the defendant raised the question that the complaint claimed damages for breach of con-

tract and not for earned salaries, wherefore the action should be dismissed. The lower court then proceeded to strike from the complaint certain items which it considered improper of a claim under Act No. 10 of 1917, as well as the setoff claimed by the defendant. One of the items which was eliminated from the complaint was a right of option in favor of the plaintiff to acquire by purchase a certain number of shares owned by the defendant, at a fixed price.

The case was submitted on the evidence for the plaintiff, inasmuch as the defendant relied on the merits of a motion for nonsuit which was denied. Thereafter the court made the following findings of fact:

"1.—On June 1, 1955, the plaintiff and the defendant executed an employment agreement whereby the plaintiff bound himself to work for the defendant under the following conditions:

"a) $8,000 annual salary;

"b) Effectiveness of the contract for one year beginning June 1, 1955;

"c) Year-to-year automatic renewal of the contract, subject to the termination of the contract upon written notice by either party 90 days in advance;

"d) The defendant was bound to pay to the plaintiff, as additional compensation, 500 common shares to be earned at the rate of 1/6 of the said 500 shares during the first month of employment, and 1/12 thereafter for the following 10 months;

"e) The defendant was also bound to give to the plaintiff, as additional compensation, an option to purchase 500 common shares at the rate of $3.50 each, to be earned by the plaintiff in the same proportion as the 500 shares above mentioned;

"f) The defendant was bound to pay to the plaintiff the sum of $33.33 as differential, and two months' vacation with pay;

"2.—Plaintiff's weekly salary, at the rate of $8,000 annually, was $153.84.

"3.—On March 15, 1956, the defendant dispensed with the services of plaintiff.

"4.—The defendant has failed to pay to the plaintiff any of the sums above mentioned, and therefore owes him the following sums for the following accounts:

"(A) The value of 437 common shares;

"(B) The right to purchase 437 common shares in addition to those above mentioned;

"(C) $307.68 covering two weeks' vacation to which the plaintiff was entitled under the contract made by the parties;

"(D) $16.66 in payment of the differential corresponding to two weeks' vacation to which the plaintiff was entitled."

On the basis of the foregoing findings, the court rendered judgment as follows:

"The defendant is hereby ordered to pay to the plaintiff the sum of $324.34 and to deliver to him 437 common shares or the market value thereof; to place at the disposal of plaintiff, at the rate of $3.50 per share, 437 common shares in addition to those already mentioned. The defendant is further ordered to pay to the plaintiff the sum of $500 for attorney's fees, and the costs incurred by the plaintiff by reason of this proceeding."

The defendant appealed from this judgment. In order to secure the effectiveness of that judgment, the trial court decreed the attachment of property belonging to the defendant up to the sum of $13,278.54, plus interest and the costs. In compliance with this order, the marshal attached the sum of $6,070.20 which the defendant had on deposit in its account in The Chase Manhattan Bank. The defendant then filed a motion entitled "Motion requesting partial annulment of attachment and for deposit of shares." It contended that the only sums payable to plaintiff by virtue of the judgment amounted to $825.34; it deposited in the office of the secretary of the court a stock certificate in favor of the plaintiff for 437 common shares owned by it, and another certificate giving the plaintiff an option to acquire by purchase 437 additional common shares, and requested that the attachment levied be reduced to the sum of $825.34. After

a hearing of this motion, the lower court entered the following order:

"In our opinion, the deposit in court of the certificates which appear in the record is equivalent to the prohibition to alienate established by § 2(a) of the Act approved March 1, 1902 (32 L.P.R.A. § 1070). Since the pronouncement relating to the shares contained in the judgment in this case constitutes an obligation to deliver a certain thing, the judgment may be secured only through the prohibition to alienate or its equivalent but not through the attachment of funds, particularly in the case at bar in which the evidence presented is not sufficient to enable the court to determine that it is intended to defraud the plaintiff who obtained judgment, but that an appeal has been taken from that judgment to the Supreme Court. Therefore, it is hereby ordered that the attachment of funds be reduced to the sum of one thousand dollars ($1,000)."

Feeling aggrieved, the plaintiff appealed. For present purposes, we will consolidate both appeals and shall first decide the appeal taken from the judgment.

 In its brief, the defendant-appellant points out that the principal question involved in its appeal is whether an executive, chief, and general manager of a corporation may file a complaint on the authority of Act No. 10 of November 14, 1917, as amended, and directs its first five assignments of error to the discussion of this question.

Act No. 10, of 1917, *supra*, establishes a simple and speedy proceeding for those cases in which "a workman or employee shall find it necessary to claim from his employer any equity or benefit, or any sum on account of compensation for work or labor done for said employer, or for compensation in case said workmen or employee has been discharged without justified cause . . . . " The Act defines both the term "worker" and the term "employee." As to the latter, the Act says, "and the word 'employee' shall comprise all kinds of artisans, employees or clerks of business or industry, in the general acceptation of these last two words." (32 L.P.R.A. § 3102.) There is no dispute in this case as

to the fact that the plaintiff is an executive. He is not a clerk or an artisan but an employee of an industry. He leased his services to the defendant under a written contract. In extending its benefits to every employee of business or industry, Act No. 10 did not distinguish between the different categories or classes of employees, nor did it therefore exclude from its provisions those who hold executive positions. *Cf. Correa* v. *Mario Mercado e Hijos,* 72 P.R.R. 77, 84; *De Arteaga* v. *Club Deportivo,* 73 P.R.R. 407, 411; *Sierra* v. *Long Construction Co.,* 76 P.R.R. 391, 394.

The defendant-appellant contends that in order to construe Act No. 10 of 1917, we must resort to the laws in *pari materia,* and to that end it cites the laws which are reported in Title 29 of the Laws of Puerto Rico Annotated. These laws create substantive rights for the benefit of workers and employees, but in order to exclude from their provisions the executives, professionals, and administrators, the Legislature expressly provided that the terms "workers" and "employees" shall not exclude such persons. For example, Act No. 289 of 1946 (Sess. Laws, p. 682), fixing a day of rest for each six working days, provided that for the purposes of this Act "employee shall be understood to mean any employee, laborer, clerk, workman, day laborer or person who works for a salary, wage or any other compensation." In construing this provision we said that a majordomo was entitled to the benefits of that Act because the term "employee" made no exclusion whatever. *Correa* v. *Mario Mercado e Hijos, supra.* Subsequently, the Legislature deemed it advisable to exclude certain employees from the benefits of this Act and actually amended the same by adding the following provisions: "Employee shall not be understood, however, to mean professionals, executives, and administrators." In construing that Act we said that in the absence of a provision expressly excluding executives the Act is applicable to the latter. *De Arteaga* v. *Club Deportivo, supra.* Thereafter the Legislature amended the Mini-

mum Wage Law (see Act No. 131, approved April 27, 1950 (Sess. Laws, p. 336), and Act No. 439, approved May 15, 1951 (Sess Laws, p. 1268)), and by express provision excluded from its benefits the executives, professionals, and administrators by providing: "workman", "employee", or "laborer" shall not include, however, "professionals, executives and administrators." Similarly, when the Legislature meant to exclude the administrators, executives, and professionals from the benefits of other labor laws, it did so by enacting an express provision similar to that above transcribed, i. e., excluding them expressly from the definition of "workman" or "employee."

However, the Legislature has never amended Act No. 10 of 1917 for the purpose of excluding from the term "employee" the executives, administrators, or professionals. Therefore, the laws in *pari materia* invoked by the defendant-appellant rather point to the fact that, in the absence of an express provision of exclusion, the term "employee" includes executives, such as the appellee herein. We have been unable to find in those laws anything which would point to the fact that in a case such as the one at bar the plaintiff can not avail himself of the procedure established in Act No. 10 of 1917, to claim from his employer the salaries and benefits accrued under an employment agreement. Consequently, the first five errors were not committed.

■■ The sixth assignment of error attacks the order of the trial court denying the motion for nonsuit made by the appellant. Its contention is that the gist of the complaint is based on the fact that the defendant-appellant violated the terms of the contract discharging the plaintiff without just cause, and that since the defendant has denied that fact and contended, on the contrary, that the discharge was for just cause, it was the duty of the plaintiff to prove that the discharge was without just cause, which he failed to do.

This assignment is grounded on a wrong premise. The action exercised by the plaintiff, after certain allegations were eliminated from the complaint, was a claim for wages and benefits earned by the plaintiff up to the day he was discharged by the defendant-appellant rather than a claim for wages, in addition to the damages for the benefits which he failed to receive from the time he was discharged and until the termination of the contract. In the latter case, appellant's contention that it was the duty of the appellee to prove that the discharge was without just cause might perhaps be worthy of some merit. Here it was sufficient to prove the duration of the services which he rendered to the defendant-appellant and the compensation to which he was entitled under the terms of the contract until the date of his discharge. However, the trial court awarded to the plaintiff-appellee the sum of $307.68 covering two weeks' vacation. In accordance with the contract, he was entitled to two weeks' vacation with pay each year, but since he did not work a full year the vacation should be proportional to the period of time he worked, namely, 9 months and 15 days, that is, from June 1, 1955, to March 15, 1956. The sum awarded for vacation should therefore be reduced to $243.69.

In the seventh and last error the appellant complains of that part of the judgment which orders it to place at the disposal of the appellee 437 common shares, at the rate of $3.50 per share. It contends that at the commencement of the trial the lower court had ordered the elimination of that item from the complaint, and that, therefore, the same could not be considered in any part of the judgment. The error, if committed, is no ground for reversing or modifying the judgment of the lower court.

A letter clarifying the terms of the employment agreement, written by the appellant to the appellee and admitted in evidence without objection, establishes beyond doubt that the right of option to purchase the shares in question should be considered definitively as part of appellee's salary. More-

over, this fact was admitted by the appellant in its allegations. The remanding of the case for a new hearing in connection with this point would serve no practical purpose, once the appellee is permitted to amend his complaint in order to reinstate the allegation which was erroneously eliminated by the court. It may be proper to say that the complaint was amended by the evidence presented by the plaintiff-appellee and admitted without objection. Consequently, we should dismiss the said assignment of error.

For the reasons stated, the judgment appealed from will be modified by reducing to $243.69 the sum awarded for vacation, and, as thus modified, it will be affirmed.

■ We now turn to consider the appeal taken by the plaintiff from the order entered in the incident on discharge of attachment.

Truly, the appeal is without merit. In accordance with the allegations of the complaint, the lower court ordered the defendant, the appellee herein, to pay to the plaintiff the sum of $324.34, plus $500 for attorney's fees and the costs. It further ordered the defendant to deliver to the plaintiff 437 common shares or their market value, and to place at the disposal of the plaintiff, at the rate of $3.50 per share, 437 additional common shares. As correctly alleged by the defendant, the option, according to the judgment, to deliver to the plaintiff the said number of shares or their market value corresponded to the defendant rather than to the plaintiff. On the judgment becoming final, the defendant could comply with the same by delivering the said 437 common shares to the plaintiff, and placing at his disposal 437 additional common shares so that he could exercise his option to purchase at the rate of $3.50 per share, and by paying to him also the liquid sums mentioned in the judgment. It is obvious, therefore, that the effectiveness of the said judgment was secured by the deposit in court of the said shares, at the disposal of the plaintiff, subject, however, to the results of the appeal taken from the judgment, and also by

the attachment of property of the defendant sufficient to cover the liquid amounts which the defendant was required to pay, as well as the costs. Although the Act to Secure the Effectiveness of Judgments (32 L.P.R.A. §§ 1069–84) provides that if the obligation on which suit is brought be the delivery of a certain object or thing possessed by the defendant or by a third person in the name of such defendant, said defendant, or third person, as the case may be, shall be prohibited from alienating or encumbering the object or thing claimed until judgment has been rendered, it is no less true that the judicial deposit of the object claimed complies more fully with the purposes of the effectiveness. It is our opinion, therefore, that the lower court did not err in entering the order appealed from and it will be affirmed.